PHILIP E. LERMAN, Chairman Department of Industry, Labor andHuman Relations
You have asked for my opinion concerning the applicability of sec. 66.293 (3), Stats., to projects financed by industrial development revenue bonds.
Section 66.293 (3), Stats., was amended by ch. 181, Laws of 1973, published April 18, 1974, to read:
 "(3) Every municipality, before making a contract by direct negotiation or soliciting bids on a contract, for any project of public works except highway, street or bridge construction, shall apply to the department of industry, labor and human relations to ascertain the prevailing wage rate, hours of labor and hourly basic pay rates in all trades and occupations required in the work contemplated. The department shall determine the prevailing wage rate, hours of labor and hourly basic pay rates *Page 146 
for each trade or occupation pursuant to s. 103.49, make its determination within 30 days after receiving the request and file the same with the municipality applying therefor. Reference to such prevailing wage rates and hours of labor determined by the department or a municipality exempted under par. (d) shall be published in the notice issued for the purpose of securing bids for the project. Whenever any contract for a project of public works except highway, street or bridge construction is entered into, the wage rates and hours determined by the department or exempted municipality shall be incorporated into and made a part of the contract. No laborer, workman or mechanic employed directly upon the site of the project by the contractor or by a subcontractor, agent or other person, doing or contracting to do any part of the work, may be paid less than the prevailing wage rate in the same or most similar trade or occupation; nor may he be permitted to work a greater number of hours per day or per calendar week than the prevailing hours of labor determined under this subsection, unless he is paid for all hours in excess of the prevailing hours at a rate of at least 1 1/2 times his hourly basic rate of pay."
The typical construction project financed by industrial development revenue bonds pursuant to sec. 66.521, Stats., is a "turnkey" project whereby an industrial concern constructs a plant facility with interim financing. Eventually the project is paid for with the proceeds from the bonds. The industrial concern agrees to sell, and the municipality involved agrees to buy the project with the proceeds from the bonds. The industrial concern agrees to lease the project back from the municipality on such terms which would retire the bonds as they mature.
The Wisconsin Supreme Court upheld the constitutional and statutory validity of a "turn-key" project financed by industrial development revenue bonds in State ex rel. Hammermill Paper Co.v. LaPlante (1973), 58 Wis.2d 32, 205 N.W.2d 784.
The question thus is whether a typical "turn-key" construction project financed by industrial development revenue bonds pursuant to sec. 66.521, Stats., involves a situation where a municipality is "making a contract by direct negotiation or soliciting bids on a contract, for any project of public works." *Page 147 
The answer is in the negative, and sec. 66.293 (3), Stats., does not apply, since a typical "turn-key" project is constructed by private industry rather than by the municipality involved.
RWW:APH